Good morning, Your Honor. Ignacio Fernandez, on behalf of Alejandro Mayendia-Blanco. Good morning. If I may, would I like to reserve two minutes for rebuttal? You may. Thank you, Your Honor. May it please the Court. Your Honor, in my brief, I think I explained in detail why we think that the District Court did not properly explain its sentence against my client, nor did it apply or follow correctly the guidelines. So I would like to move on to a different topic regarding actual loss, instead of keep beating on that dead horse, because I think I talked about it a lot in my brief. Actual loss, Your Honor, means just that. I know it seems redundant what I'm just saying, but it means a number. A number that has to be calculated or reasonably calculated that states how much the victim lost because of the fraud, and the person that knows what that loss is, is precisely the victim. In this case, however, Your Honor, no evidence from the victim was sought to calculate the loss. The Court only looked at the indictment, looked at the dismissed counts and the account of conviction, added up the down payments, and that's how it calculated the actual loss. Obviously, we did not know at sentencing that the Court was using actual loss. We know now because of the remand order that this Court issued to the District Court. Now, that is particularly troubling in this case because the mortgage in this case was issued by a mortgage broker. It was then sold or transferred to First Bank. First Bank was then dissolved by the FDIC, and the loan eventually ended up with Banco Popular. So if Banco Popular had presented evidence regarding the loss, the first question I would have asked is, how much did you pay for the loan to determine what was the actual loss of the bank? That obviously did not happen here. Now, what I'm saying is the government recognized this problem, Your Honor, during the change of plea hearing, and I'm referring to page 138 of my appendix. During that exchange between the government and the District Court, the government explained that the restitution use was an estimate that the defense and the government came up with to actual loss. But to calculate the actual loss was going to be very difficult, precisely because of the reasons that I'm telling the Court right now. The people who originated the loans, the files, and so forth, First Bank is no longer in existence. So it was very difficult for the government to calculate that loss, and that's why it sort of was a best-case estimate, I would say. Isn't there an issue of waiver here? I don't think so, Your Honor. That's what the government is arguing. Well, there is an issue of waiver then. Regarding what? Regarding the application of the guidance? No, I thought it was also dealing with the loss amount. Well, the problem is that the Court never determined the loss amount. The defense counsel at sentencing always raised to the Court the issue that there was nothing on the record that should move the Court to calculate a loss different from the amount stipulated. I don't think that's a proper objection. There's a pretty strong argument, it looks like, that what the Court should have done was ascertain the total principal and then subtract from that the value of the collateral, and then you'd have the loss. That's one way of doing it, yes. Well, that's the way the application note puts it, isn't it? Yes. And so I think the waiver question is, did you make that argument below? And if you didn't, is there any reason that forfeiture or waiver wouldn't normally apply? And if forfeiture applies, do you nevertheless still prevail? Let me answer that, the last part of your question first, and I'll get back to the first. If it was not properly objected to, if it was not properly raised, I would say plain error applies now. And now I will refer to the Supreme Court's decision in U.S. v. Martinez, I believe it was, a 2016 case, that said that if a defendant can prove or can demonstrate on appeal that the guidelines were incorrectly calculated, that satisfies this third and fourth prong of plain error. And the defendant does not have to demonstrate that but for the error, he would have received a lower sentence. And I think in this case, it precisely applies. I mean, had the guidelines been correctly applied, at least pursuant to the plea agreement, my client would have been sentenced in zone C of the sentencing table and not D. So there's a harm right there. Now getting back to the first part of your question, Your Honor. I'm not sure that my client had an obligation to object or to raise the issue when neither the government nor the defendant were proposing to the court a different loss amount than the amount that was stipulated. The government and the defendant agreed on the amount that should be used as a loss. It was stipulated. I'm not sure the defendant had anything else to do. The court didn't say that it was going to apply a different loss all the way up until the end. Well, I think the argument would be, didn't the PSR at some point have the 409,000 figure that was a composite of the down payments on the three properties? Yes. So I think the argument would be, at that point, the defendant should have said, you just can't use the deposits. Yes. And there was objections to the PSR, which are in the appendix. And the defense counsel at that sentencing argued that there was no basis to use those down payments for the actual loss. And he precisely argued in his objections that the actual loss must come from the bank, from the victim itself. When you sought bail on appeal, did you basically go along with what the judge had said as far as the down payments was concerned? When I first filed my motion for appeal, I didn't know what the judge had done. So I basically argued in an alternate whether the judge had used the down payments or whether he had used that ex parte information that was received from the banks. That the defense did not have access to. So I used both arguments. It is only after this court remanded the case to the district court that we learned that the court had actually used the down payments to calculate the loss. Well, I have the impression that when you filed your motion for bail on appeal, you were already aware of the fact that the judge had added the down payments on all three accounts. No, actually not at that point, no, no, your honor. The judge added the three down payments or used the information provided by the bank, the statement of accounts. It was still the same specific offense characteristic enhancement. It made no difference. That's why I... Thank you, your honor. Thank you. Morning, Ms. Schwartz. Morning, your honors. May it please the court, Maiden Schwartz for the United States. The objection to the failure to deduct the collateral value is waived because it was never raised below. The PSR, in all three of its iterations, used that calculation as its loss calculation, said it was adding the down payments from all three charges. And the defendant acknowledged as much. In his opening brief, he said the probation officer calculated a $409,000 loss by estimating... by adding up the three down payments included in each of the three counts of the indictment and then notes that the court agreed with that calculation of the GSR. That's defendant's opening brief at pages six and seven. So at that point below, that's when the defendant's duty to object and say you need to deduct the value of the collateral should have arisen. So if that's correct, we have a forfeiture. Why isn't it plain error? Because the failure to object to raise an objection to the PSR is a waiver under the local rules. But even if it's a forfeiture because it wasn't raised, he doesn't carry his burden on plain error. The defendant mentions Molina-Martinez, but that's not the proper analysis here. Because in Molina-Martinez, we had a case where the error clearly and obviously changed the applicable guidelines. We don't have that here. What we have is a case much closer to United States v. Cox, which is a First Circuit case from 2017 that was cited in our brief when we're talking about relevant conduct. But it also contained some loss amount analysis. And in that case, the defendant was complaining that the court had not deducted principal payments from the amount of the loan. And this court said, well, unless you can show principal payments sufficient to change the loss amount so much that it results in different guidelines, you haven't carried your burden on plain error. Well, let's take this record. I mean, it seems to me that it was plainly wrong to just grab the deposit and use those as the loss. So we would not concede that. And the reason we would not is because of Application Note 3C. And there's some tension, admittedly, between Application Note 3C and Application Note 3E. But what 3C says is that the court just has to provide a reasonable estimate because it's in a unique position to understand the facts. Why would the deposit paid at the beginning of the loan, at the taking out of the loan, why would the deposit serve as a proxy or an estimate or a representation of the damage to the bank when it then goes to foreclose and finds out that the deposit had been kicked back to the seller? The reason it's a reasonable estimate in this case is because it's an unusual sort of mortgage fraud. It's not your sort of run-of-the-mill mortgage fraud. And in this case, the amount of the down payment was clearly what induced the bank to make that loan. But that's still not sure. That's what induced it. But that's not loss. Loss is the bank's loaned out $100,000. It thinks that the homeowner, homebuyer is putting down $20,000. So it thinks it's a $20,000 buffer that it's got to protect its loan. And then it finds out it doesn't have that buffer. Well, if its estimate was correct, it has zero damage other than its cost of foreclosing. If the value of the house is higher or is appreciated, the bank will have no loss whatsoever if the value of the house plummeted. So the application note says take the principal balance, take an appraisal of the collateral, calculate the difference. Nothing was put in here, and I assume because the government wasn't seeking a higher amount. So how can you say the record would show that the court could have still picked the same amount? It seems the record doesn't even have the ingredients to make the required calculation. Correct. So, again, I want to return to this idea of the tension between 3C and 3E. Because while 3E says that you should deduct the collateral value, 3C says that the court should take into account, as appropriate and practicable under the circumstances, things like the fair market value. And it lists the fair market value there specifically. So if on one hand the court is supposed to do it if it makes sense under the circumstances, and on the other hand it's supposed to do it no matter what, that's tension. And so the government's position is that 3E only makes sense if you're starting from a different number than the district court was starting from. And the reason it was starting from, I understand everything Your Honor has said about the typical calculation of loss in mortgage fraud cases. But in this case, given that the loss, there were two types of loss. The first was really a hard-to-measure loss to the bank in the form of additional risk. And one way to value the additional risk that they took on was by the value that they themselves put on it, which was the down payment that they required to mitigate the deficit. That wasn't the value of the risk. The down payment's not the value of the risk. The down payment was the value of the delta in risk. The down payment's designed to affect the risk. Sorry, say that one more time, Your Honor. Sure. How does the down payment represent an approximation of risk? And secondly, when we're looking retrospectively, why do we care what the prospective a priori risk was? Instead we'd look at what is the loss? We now know there's been a defalcation. Well, unfortunately, in this case, we don't know. And that's one of the reasons why, even if we apply it from there. So isn't that the point, there's no evidence in the record, because the prosecutor and the defense counsel had reached an agreement that the loss was X, went in there, then out of the blue, the court then... Well, not out of the blue, Your Honor, because it was in the PS4. Well, the court grabbed the deposit numbers we now know in retrospect, although we couldn't tell. That's why we sent it back down to say, well, what did you do here? It's undisputed, though, that that loss calculation was before the district court and that the defendant's duty to object to that in the PSR arose. So had the defendant come forward and said, hey, you have to deduct the value of the collateral, that would have given the district court the opportunity to solicit some sort of estimate. The very small evidence that we have on the record is that that collateral value is very low, not only because of the testimony about the condition of the apartment buildings, but also just because of the fact of the default, which defendant attributes to a general downturn in the economy and his father's inability to make those payments. So there is evidence in the record that things weren't going well on the island. And, again, it's certainly not a number, but what we would have to do if this were to be remanded for the calculation under 3E is we'd start with the principal balances, which aren't fully known, but we know that the total value of all the mortgages was $1.6 million. And if we deduct the principal payments, which weren't very much because default, there's still a very good possibility that even then, after deducting whatever the collateral value is today, that he ends up in a much higher guidelines range. Well, he could end up with no loss at all. Excuse me? He could end up with no loss at all. If the appraisals come in and exceed the principal balance on pay, then there's no loss. That is possible. I wouldn't say it's unlikely, but it is possible. If the property were to have lost value by at least 20%, there'd be a loss, 20%, 25%. Yes, and there's, again, reason on the record to believe that it has fallen more than that. But in any case, that amount of loss is purely speculative at this point, and so that takes me back to United States v. Cox, which this court said, unless you can show us an amount of money that we know is going to place us in a different guidelines range, which is that's what happened in Molina Martinez and is not what has happened here, then any prejudice is purely speculation and you can't reverse for that. In other words, there's not a clear or obvious error here that we know would result in different guidelines, and that's really the difference between this case and Molina Martinez. So if the court had used a Ouija board to come up with a number, you would say we would not reverse? One would hope, in that hypothetical, that the defendant would be able to introduce some evidence that would show that that Ouija board had not resulted in the appropriate guidelines. Do your honors have any questions about the waiver and forfeiture arguments? If those are otherwise clear, then the only remaining point I wanted to make was on the question of remand in front of a different judge, and just that there's some evidence in the record that whatever the dispute between defense counsel and the judge actually was, and keeping in mind this court's acknowledgments that usually such clashes don't justify remand before a different judge, that Mayavian nonetheless got a sentence at the bottom end of the guidelines range from Judge Pesosa. So there's not anything in the record here that would lead this court to assume that he had been unfair or unduly harsh since he got a low-end guidelines sentence. And with that, I'll yield the rest of my time.  Mr. Fernandez? Thank you, Your Honor. If I may, please report again. My sister was saying that we could not point to a different number of laws that would show that the district court will use a different guideline. Well, yes, we can. We can have a stipulated amount. That's a different number that can be used by the court, and that would reduce the guideline range. And again, I place my claim in Zone C of the sentencing table instead of Zone D. Now, regarding the PSR, Your Honor is correct that the PSR does say that I believe the exact quote is, according to the indictment, the loss amount is $400,000-something, and it came up by adding up the down payments. The defense counsel, however, did object to those, did raise the objection in writing, stating that at one point, in his written objection, what he did not do, and I have to be candid with the court, is that the defense counsel did not cite the commentary which I did in my brief regarding the deduction of the mortgage value. The defense counsel, at the district level, only stated that credits have to be applied to the loss. I recognize it was more of a general objection. It did not cite the commentary that I did and that I'm raising to Your Honor, but I think the objection is sufficient to preserve the error and appeal. But then again, even if there is an issue of waiver, does that waiver release the court from its obligation to properly calculate the guidelines? I would think no, Your Honor. I think the court has a duty to calculate the guidelines properly. Thank you, Your Honor. Thank you.